**PREMIER ELECTRICAL CONSTRUCTION COMPANY, Plaintiff,**

v.

**MILLER–DAVIS COMPANY and St. Arnaud Electric Company, Defendants.**

**No. 68 C 407.**

United States District Court
N. D. Illinois, E. D.

Sept. 16, 1968.

A. Denison Weaver, Chicago, Ill., for Premier Electrical Construction Co.

Owen Rall and Peter M. Sfikas, Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., for Miller-Davis Co.

Luther McKinney and John Berghoff, Chadwell, Keck, Kayser, Ruggles &

McLaren, Chicago, Ill., for St. Arnaud Electric Co.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Motions of Defendants to Dismiss and for Judgment on the Pleadings

This is a civil antitrust action in which plaintiffs seek to recover treble damages for injuries resulting from an alleged violation of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1–7, 15.

Plaintiff, Premier Electrical Construction Company and defendant St. Arnaud Electrical Company are direct corporate competitors engaged in the electrical construction business. Defendant Miller-Davis is in the general contracting business. On February 3, 1966, the Atomic Energy Commission sent invitations to various general contractors, including defendant Miller-Davis, to submit bids for an addition to the Argonne National Laboratory, Argonne, Illinois. The project was known as the Accelerator Improvement ZGS, FY–65 Meson Building Addition. In order to prepare their bids, the general contractors, including Miller-Davis, then sent invitations to various electrical sub-contractors, including Premier Electrical Construction Company, requesting bids on the electrical work to be performed on the Argonne project.

Plaintiff alleges that sometime between January 15, 1966, and March 3, 1966, a conspiracy arose between Miller-Davis and St. Arnaud such that Miller-Davis would induce St. Arnaud's competitors, including plaintiff, to submit inflated bids to the competitors of Miller-Davis, thereby insuring a successful bid by Miller-Davis and a sub-contract for St. Arnaud. Plaintiff claims that on March 3, 1966, it submitted its bid by telephone to Miller-Davis, was advised that it was the low bidder and, assuming that Miller-Davis was awarded the prime contract, that it, Premier, would be awarded the electrical sub-contract on

the condition that it would "protect" Miller-Davis by submitting artificially inflated bids to other general contractors.

In its complaint (¶12), plaintiff acknowledges that it agreed to "protect" Miller-Davis if Miller-Davis would inform plaintiff of its receipt of a lower bid by a third party so that plaintiff could rebid to defendant's competitors. Miller-Davis did not advise plaintiff of any competitive bid on the electrical sub-contract. Plaintiff did submit high bids to general contractors other than Miller-Davis. The Atomic Energy Commission awarded the contract to Miller-Davis who then gave the sub-contract to defendant St. Arnaud.

On October 13, 1966, in another District Court for the Northern District of Illinois, Eastern Division, plaintiff filed a suit against Miller-Davis entitled Premier Electrical Construction Co. v. Miller-Davis Co., Civil Action No. 66 C 1850. Plaintiff's amended complaint in that case set forth basically the same facts alleged in the present suit, save for the purported involvement of St. Arnaud. The language of the amended complaint in the first suit is virtually identical to that recited in the instant issue, especially in those paragraphs which relate to the agreement to "protect" Miller-Davis. The original action sought $40,000 for breach of contract. Trial ended on March 27, 1968, and the case was taken under advisement. A decision is expected to be rendered shortly.* In the present complaint, filed March 4, 1968, plaintiff claims deprivation of profits amounting to $65,000 as its damages and seeks an award of treble damages under 15 U.S.C. § 15.

Defendant Miller-Davis has moved to dismiss the present suit on the grounds of *res judicata* and *in pari delicto*. Defendant St. Arnaud seeks a judgment on the pleadings based on the doctrine of *in pari delicto*. Defendants admit plaintiff's factual allegations regarding the contract and sub-contract negotiations

* Premier Electrical Construction Company v. Miller-Davis Company, Sept. 23, 1968, 291 F. Supp. 295.

for the limited purpose of making their motions.

■ Because its first suit is based on contract while the present case stems from an alleged violation of the Sherman Act, plaintiff suggests that the respective causes of action are "totally separate and distinct in every respect." (Brief at 3). This argument is not well taken. It is the facts in each case, not the theories, which are crucial in determining the applicability of res judicata. Wolcott v. Hutchins, 245 F.Supp. 578 (S.D.N.Y. 1965), aff'd 365 F.2d 833 (2d Cir. 1966). Both of plaintiff's suits arise out of the same operative facts and disputed transactions the end result of which was the failure of plaintiff to secure the electrical sub-contract from Miller-Davis. The mere addition of a new, federal theory will not support new litigation.

The closest case in point to the one at bar is Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 295 F.2d 362 (5th Cir. 1961). In that case as here, plaintiff first filed a contract action and later sought relief in a civil antitrust suit. Both cases were based on the same refusal of defendant to deal with the plaintiff. The Court of Appeals for the Fifth Circuit held the former case to be res judicata of the later one. The Court said at 363–364,

"It is settled, contrary to appellant's contention, that a litigant may not split his claim and have two trials on the same alleged breach of duty. Basically, Norman claimed the same 'right' in both suits—the right to purchase Gillette products directly from Gillette. The only wrong charged against Gillette was its refusal to continue to deal with Norman. We held in the contract case that Norman had not shown that Gillette wrongfully refused to deal with it. There, appellant relied upon the breach of Gillette's supposed contractual relationship as the basis of its claim. Here, appellant relies upon the breach of the anti-trust laws as the basis for the alleged breach. But there was but one breach and one only and appellant has had its day in court and has lost. It cannot litigate this same breach again. (Citing cases)."

Plaintiff relies on Engelhardt v. Bell & Howell Co., 327 F.2d 30 (8th Cir. 1964) and Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927). In Engelhardt, however, a decision in an earlier suit under Missouri antitrust law was held to be res judicata in the later suit brought under federal antitrust statutes despite the incorporation of more specific allegations of interference in interstate commerce and a prayer for a different amount of damages. A plaintiff must plead his entire case on all theories at one time. Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 320, 47 S.Ct. 600, 71 L.Ed. 1069 (1927); Engelhardt v. Bell & Howell Co., 327 F.2d 30, 33 (8th Cir. 1964). This plaintiff has not done. In fact, Premier filed the present suit within a few weeks prior to the trial of its original suit against Miller-Davis.

■ Nor will a change in parties necessarily affect the applicability of res judicata. See, e. g., Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927). In Koblitz v. Baltimore and Ohio Railroad Co., 164 F.Supp. 367 (S.D.N.Y.1958), the Court held that a new charge of conspiracy in a second suit brought by plaintiff against defendant was not sufficient to preclude the application of res judicata in the second case. The Court said, at 372,

"Here the wrongs complained of, the harm to the plaintiff and the recovery sought are substantially identical. The same witnesses and the proof of the same facts would be necessary to establish the allegations of the prior complaint and would support both actions. * * *

"To the extent, if at all, that the allegations of the present complaint are dissimilar to those in the prior action, all the facts now pleaded were known to the plaintiff and could have been presented in the first action."

As to defendant Miller-Davis, *res judicata* would be a good defense if there were a final judgment in the first suit. While a decision is expected in a few days, such a final judgment has not yet been handed down. However, concurrent duplicate litigation is no less undesirable than successive duplicate litigation. In either situation, a second suit violates principles of comity between judges, creates administrative inefficiencies in the federal courts, and imposes an unfair burden on the defendant. Eastern States Petroleum & Chemical Corp. v. Walker, 177 F.Supp. 328, 333 (S.D.Tex.1959); Emerson Electric Manufacturing Co. v. Emerson Radio and Phonograph Co., 140 F.Supp. 588, 589 (D.N.J.1956). Thus, the public policies in favor of a single suit in a single controversy and against contentious litigation remain viable. Asbury v. Chesapeake & Ohio Railway Co., 264 F.Supp. 437, 438 (D.Col.1967); Paluchowska v. United States Lines Co., 93 F.Supp. 751, 752 (S.D.N.Y.1950). The pendency of a prior action in the same jurisdiction, between the same parties, and arising out of the same transaction constitutes good grounds for abating the subsequent suit. Commerce Oil Refining Corp. v. Miner, 303 F.2d 125 (1st Cir. 1962). Consequently, the motion to dismiss of defendant Miller-Davis is granted.

Defendant St. Arnaud was not a party in the original action brought by Premier and may not now plead *res judicata* or take advantage of abatement. St. Arnaud's motion for judgment on the pleadings is based on the defense of illegality. Miller-Davis has adopted the arguments of St. Arnaud as additional support for its motion to dismiss. The Court is faced with two questions: whether plaintiff's agreement with Miller-Davis is illegal and, if illegal, whether plaintiff is barred from recovery of treble damages in a civil antitrust suit.

Defendants claim that Premier is seeking to collect on an illegal bid-rigging agreement. Plaintiff, in his complaint, affirmatively pleaded that, as consideration for a promise of business, it agreed to "protect" Miller-Davis by submitting higher bids to other general contractors, but now suggests that such conduct is not illegal because the agreement was not between direct competitors. Premier even asserts that its agreement "could only promote competition between the various contractors [because plaintiff] removed itself from competition." (Brief at 9).

That Premier's conduct is illegal is clear. In accord with a secret agreement with one of the defendants, plaintiff presented artificially inflated bids to all general contractors who were competitors of Miller-Davis. By failing to submit the same low bid on the subcontract to all general contractors, plaintiff intended to insure the success of one favored party. "A bargain not to bid at * * * any public competition for a * * * contract, having as its primary object to stifle competition, is illegal." Restatement, Contracts § 517 (1932). The falsification of a bid, in itself and by effectively excluding others from competition, stifled the unfettered operation of the market place. A restraint on price competition and on meaningful access to the market is illegal *per se*. United States v. General Motors Corp., 384 U.S. 127, 145–147, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); Klor's Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Rigging competition on a public contract whether done directly or indirectly, is simply a restraint of trade in violation of public policy and void. See generally, Corbin, Contracts § 1468 (1962).

Plaintiff attempts to avoid the impact of these clear rules, claiming that it was not a direct competitor with the other party to the protection agreement. However, the particular form taken by the agreement, whether price fixing or profit sharing, horizontal or vertical, is really immaterial. Klor's Inc. v. Broadway-Hale Stores, Inc., 359 U.S.

207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). Thus, in Mechanical Contractors Bid Depository v. Christiansen, 352 F.2d 817 (10th Cir. 1965), cert. denied, 384 U.S. 918, 86 S.Ct. 1365, 16 L.Ed.2d 439 (1966), it was held that foreclosure of a subcontractor's competitive bid to general contractor by repressive rules of a bid depository association was illegal.

Given, then, that plaintiff's conduct is illegal, may he nevertheless recover treble damages in a civil antitrust suit? Plaintiff submits that the recent Supreme Court decision in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d (1968), precludes defendants' use of the doctrine of in pari delicto, under which a court will not entertain a suit brought by a party in equal fault with the defendant(s). At first blush, plaintiff seems correct for Mr. Justice Black, in announcing the Court's decision, held "that the doctrine of in pari delicto, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action." 392 U.S. at 140, 88 S.Ct. at 1985.

A closer look at the opinion, however, suggests that the quoted statement neither deserves nor was intended to have universal application. The Court's opinion rests on two pillars: one, mere participation in an illegal scheme is not a sufficiently serious wrong to warrant denial to plaintiff of his chance in court and, two, the public policy in favor of competition is furthered by allowing private suits for treble damages. The opinion stresses and must be read in light of, the facts. In the Court's view, plaintiff's lack of initiative and commitment to the illegal scheme was crucial. Thus, "their [petitioner's] participation was not voluntary in any meaningful sense," "many of the clauses [in the franchise agreement] were quite clearly detrimental," "acquiescence was necessary," and "plaintiff did not aggressively support * * * the * * * scheme." Rather, the arrangement was "formulated and carried out by others" and "thrust upon them" by defendants.

392 U.S. at 139–141, 88 S.Ct. at 1985, 1986. On these facts, Mr. Justice Black held that plaintiffs could maintain their action.

However, the Court refused to go farther, to extend its decision to cover cases involving a more tainted petitioner. Mr. Justice Black, at 140, 88 S.Ct. at 1985, said:

"We need not decide, however, whether such truly complete involvement and participation in a[n] [illegal] scheme could ever be a basis, wholly apart from the idea of pari delicto, for barring a plaintiff's cause of action * * *."

That the defense of illegality is still viable in civil antitrust actions is further supported by the other four opinions in the case. Mr. Justice White, in his concurring opinion, stated that a condition precedent to allowing a tainted plaintiff to proceed with a treble damages suit was that plaintiff's participation was coerced or thrust upon him. He cautioned, however, that a moving force "should not be rewarded for his efforts to further an unlawful price arrangement" and take from defendant treble damages. 392 U.S. at 145, 88 S.Ct. at 1988. The approach of Mr. Justice Fortas was similar for he said that a co-adventurer, one who "originated and insisted" upon the illegal scheme could not recover damages. 392 U.S. at 147–148, 88 S.Ct. 1981, 1989, Mr. Justice Marshall would allow the defense of illegality against a plaintiff who "actively participated in the formulation and implementation" of the illegal scheme. 392 U.S. at 149, 88 S.Ct. at 1989. Justices Harlan and Stewart agree that in pari delicto has its place in antitrust cases. 392 U.S. at 153, 88 S.Ct. 1981.

Thus, in each of the five opinions in the case, the door was left open for a limited application of a defense of illegality in civil antitrust actions. The distinctions drawn throughout the various opinions are particularly relevant here. Premier is not a mere participant

or unwilling victim of the transaction out of which this case arose. Rather, Premier was an originating, moving, active and aggressive party to the illegal bid-rigging scheme. There is no indication that the Supreme Court sought to protect a plaintiff so intensely involved in an illegal restraint on trade.

Moreover, it is difficult to see how allowing a suit for treble damages, under the facts in this case, would be consistent with the purposes of the antitrust laws, the second main rationale advanced by Mr. Justice Black for his decision in *Perma Life*. Discussing an example similar to the present case, Mr. Justice White noted, at 146, 88 S.Ct. at 1988:

> "To permit [plaintiff] a recovery may be a counter-deterrent. By assuring him illegal profits if the agreement in restraint of trade succeeds, and treble damages if it fails, it may encourage what the Act was designed to prevent."

Conversely, if allowing relief would be counterproductive, and possibly add an undesirable incentive to violate the law, denial of relief to plaintiff, as the Supreme Court has recognized for many years will, more probably, discourage involvement in illegal schemes.

> "The more plainly parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law \* \* \* the less inclined will they be to enter into them. In that way the public secures the benefit of rigid adherence to the law." McMullen v. Hoffman, 174 U.S. 639, 670, 19 S.Ct. 839, 851, 43 L.Ed. 1117 (1899).

Plaintiff in this case initially violated the law in an attempt to secure a public contract. Having failed, it now seeks not just refuge, but reward in this court. We find no sanctuary in the *Perma Life* decision for a plaintiff like this. If ever a party was to be barred from recovering treble damages, it is Premier. While we sanction the defense of illegality, call it *in pari delicto* if you

will, in these circumstances, it is not, of course, because of our approval of defendants' actions, but because the law will not enforce what is forbidden, and "will leave the parties as it finds them." McMullen v. Hoffman, 174 U.S. 639, 670, 19 S.Ct. 839, 851, 43 L.Ed. 1117 (1899). Consequently, plaintiff will not be permitted, having attempted to avoid the burdens, now to reap the benefits of the law. The respective motions of Miller-Davis and St. Arnaud to dismiss and for judgment on the pleadings are granted.