**PUREX CORPORATION, LTD., a corporation, Plaintiff,**

v.

**GENERAL FOODS CORPORATION, a corporation, and the S.O.S. Company, Inc., a corporation, Defendants.**

**Civ. No. 69–965–WPG.**

United States District Court,
C. D. California.

Oct. 27, 1970.

Gibson, Dunn & Crutcher, by Paul G. Bower, Los Angeles, Cal., for plaintiff.

O'Melveny & Myers, by Warren Christopher, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM P. GRAY, District Judge.

In this private antitrust action, brought under section 4 of the Clayton Act, 15 U.S.C. § 15, Purex Corporation, Ltd., seeks to recover for damages allegedly resulting from the 1957 acquisition of The S.O.S. Company, Inc., by defendant General Foods Corporation. That acquisition was held to violate section 7 of the Clayton Act, 15 U.S.C. § 18, in proceedings conducted by the Federal Trade Commission (Trade Regulation Reporter (CCH), March 28, 1966, ¶17,465). Pursuant to the Commission's order, after affirmance by the United States Court of Appeals, 386 F.2d 936 (3d Cir. 1967), cert. denied, 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 657 (1968), General Foods divested its holdings of S.O.S. in 1968.

All of the assets of Brillo Corporation, the major competitor of S.O.S. in the field of household steel wool products, were acquired by Purex in 1963. One of the assets allegedly received by Purex in that transaction was the right to sue for injuries resulting to Brillo from the acquisition of S.O.S. by General Foods, and it is upon the strength of the ownership of such right that the present suit is brought.

The defendants, in the fourth and fifth affirmative defenses urged in their answer to the complaint, contend that Purex's acquisition of Brillo was in violation of the antitrust laws, and that the present suit may not be maintained, because Purex should not be permitted to take advantage of its own illegal conduct. More specifically, these defenses allege that the Purex-Brillo acquisition violated section 7 of the Clayton Act, 15 U.S.C. § 18, and sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. The concluding assertion of the fourth affirmative defense is that the plaintiff is barred from seeking to profit from its own illegal conduct, and the fifth affirmative defense contends that Purex lacks standing to bring this action.

■ The plaintiff has brought a motion to strike these two defenses, claiming that they are "insufficient" as a matter of law under Rule 12(f), Fed.R. Civ.P. The question thus presented is whether it is a defense to a private treble damage action that the plaintiff acquired the cause of action through an illegal acquisition of the corporation that suffered the alleged injury.

■■ This court is mindful that it should be slow to grant motions to dismiss affirmative defenses. A defendant should be given the opportunity to *prove* his allegations if there is any possibility that the defense might succeed after full hearing on the merits. See Carter-Wallace, Inc. v. Riverton Laboratories, Inc., 47 F.R.D. 366, 368 (S.D.N.Y.1969). On the other hand, if the defense here asserted *is* invalid as a matter of law, such determination should be made now, in order to avoid the needless expenditures of time and money in litigating in this action the legality of two separate and distinct corporate acquisitions, rather than one.

After having considered the memoranda submitted by both parties and after having heard oral argument, this court has concluded that the appropriateness of the plaintiff's acquisition of Brillo may not properly be raised in this action, and that the plaintiff's motion must therefore be granted.

Kiefer-Stewart v. Seagram, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), appears to control the resolution of the issue here presented. The opinion in that case abolished the defense of "unclean hands" in private antitrust suits. It held that proof of independent price fixing violations by the plaintiff could not establish a defense to a finding that the defendants' own price fixing activities had violated the antitrust laws. As described in Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 139, 88 S.Ct. 1981, 1985, 20 L.Ed.2d 982 (1968), Kiefer-Stewart was

"  *  *  * premised on a recognition that the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws. The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement."

The *Kiefer-Stewart* rationale does not appear to be rendered inapplicable merely because the plaintiff acquired the very cause of action sued upon in an allegedly illegal transaction. While allowing Purex to recover in these circumstances may, in a sense, reward it for unlawful activity, *Kiefer-Stewart* makes it clear that such a seemingly anomalous situation must be tolerated in order to promote the general public interest.

A significant impediment to the policy of encouraging private antitrust actions would be created if the defenses of the type asserted here were allowed to stand. Such defenses would likely be raised whenever a plaintiff sued on an antitrust claim growing out of injury to a corporation that it had acquired, even if the defendant had in no way been harmed by that acquisition and would not otherwise have challenged it.

Furthermore, allowing these two defenses to stand might well result in the grant of a windfall to the defendants, who would effectively be immunized from liability if it were ultimately determined that the originally injured corporation, Brillo, was illegally acquired by Purex. The liability of an antitrust violator should not depend upon the mere fortuity that the corporation injured by it is acquired illegally before a suit for damages is commenced. If the defendants actually were harmed by the Purex-Brillo acquisition, the remedy of the private antitrust damage action is still avail-

able to them. Perhaps significantly, no such claim has been raised in an independent suit, nor has such a cause of action been asserted as a counterclaim in this case. The two affirmative defenses in question here merely allege the illegality of that acquisition. They contain no claim of damage to the defendants, nor do they ask that Purex be required to divest itself of the assets of Brillo.

In opposing the motion now before this court, the defendants argue that these defenses may not be stricken, inasmuch as a factual inquiry still must be made to determine whether or not the conduct of the plaintiff was sufficiently involved in the claim asserted to disqualify it from recovering in this action. In support of this argument they rely upon Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981 (1968), and Premier Electrical Construction Co. v. Miller-Davis Co., 422 F. 2d 1132 (7th Cir. 1970). Those cases, however, concerned the defense of *"in pari delicto"* which in no way may be said to be involved here. That defense, which literally translated means "of equal fault," has been historically utilized to defeat recovery by plaintiffs who were participants in the very scheme of which they complained. Here, the transaction primarily complained of, the 1957 General Foods-S.O.S. acquisition, was completely separate from and independent of the allegedly illegal actions of Purex in acquiring Brillo, which occurred six years later. Even assuming, therefore, that after the *Perma Life Mufflers* case there still are situations in which the defense of *in pari delicto* may be asserted in private antitrust actions, it is clear that, as a matter of law, no such situation could be established under the affirmative defenses as pleaded here.

Finally, in support of its argument that this court should not lend its aid to the plaintiff's illegal conduct, the defendants cite three cases involving the defense of antitrust illegality in suits on private contracts: Bruce's Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947); Continental Wallpaper Co. v. Lewis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1909); and Farbenfabriken Bayer, A.G. v. Sterling Drug Co., Inc., 307 F.2d 207 (3d Cir. 1962). Whether such a defense is valid in private contract litigation, see Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), is irrelevant to the question of whether it is permissible in an antitrust action. This is made quite clear by *Kiefer-Stewart*, which was a 1951 decision and thus postdates two of the cases relied upon by the defendants. Also, as discussed above, it establishes quite clearly that the relative equities between private litigants must yield to public policy considerations when antitrust suits are concerned.

Accordingly, for the reasons hereinabove set forth, the plaintiff's motion to strike the defendants' fourth and fifth affirmative defenses is granted, and they are hereby ordered stricken.