SKOURAS THEATRES CORPORATION et al., Plaintiffs,

v.

RADIO–KEITH–ORPHEUM CORPORATION et al., Defendants.

BROADWAY & NINETY-SIXTH STREET REALTY COMPANY et al., Plaintiffs,

v.

LOEW'S INCORPORATED et al., Defendants.

Civ. Nos. 85–239, 85–258.

United States District Court, S. D. New York.

Jan. 5, 1973.

Wachtell, Lipton, Rosen & Katz, New York City (Bernard Mindich and Herbert M. Wachtell, New York City, of counsel), Weisman, Celler, Allan, Spett & Sheinberg, New York City (Leonard Kaufman, and Joseph A. Ruskay, New York City, of counsel), for plaintiffs.

E. Compton Timberlake, New York City, for defendants Paramount Pictures, Inc., Paramount Pictures Corp., Paramount Film Distributing Corp., and American Broadcasting-Paramount Theatres, Inc.

Davis, Polk & Wardwell, New York City, for defendant Metro-Goldwyn-Mayer, Inc.

Simpson, Thacher & Bartlett, New York City (Albert C. Bickford, New York City, of counsel), for defendant American Broadcasting-Paramount Theatres, Inc.

Howard Levinson, New York City, for defendants Warner Bros. Pictures (in dissolution), Warner Bros. Pictures Dist. Corp., and Warner Bros. Circuit Management Corp.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Gerald F. Phillips and Louis Nizer, New York City, of counsel), for defendant United Artists Corp.

## MEMORANDUM

STEWART, District Judge:

The Court amends its opinion of December 20, 1972 to read as follows:

Plaintiffs in this action are owners, lessees, operators and managers of motion picture theatres and exhibitors of motion pictures in the New York City area. Defendants are major motion picture producers, distributors and exhibitors. The conspiracy and monopoly charged in this private treble damage antitrust action are based in whole or in part upon violations of the antitrust laws found in United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, D.C., 70 F.Supp. 53, aff'd. in part and reversed and remanded in part, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, D.C., 85 F.Supp. 881, aff'd. 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380. In particular, plaintiffs charge that defendants have discriminated against independent exhibitors in and around the New York City area to the advantage of theatres owned by defendants.

The issues involved in this action are complex and the proceedings to date have been protracted, exhausting and exhaustive. The complaint was filed in June, 1953, after the decree in the *Paramount* case had been entered. The Court, over the next twelve years, entertained and ruled on a number of pretrial motions. In 1965, the last of such motions, consisting of defendants' motion for summary judgment, was filed. In February, 1967, the Court reserved decision on this motion pending comple-

tion of discovery by the parties in connection with the motion. 67 CCH Trade Cases 72,017. After several years of such discovery, that motion for summary judgment has been fully briefed and argued, and is now before this Court for decision.*

Since the motion was originally brought, the law upon which it is premised has been reinterpreted by the Supreme Court, further complicating the contentions surrounding this action. The thrust of defendants' argument for summary disposition is that plaintiffs are barred from prosecuting this action under the classic doctrine of *in pari delicto*, namely, that plaintiffs were directly implicated in the conspiracy condemned by the court in *Paramount* and are thereby estopped from proceeding with a private treble damage action. Plaintiffs, on the other hand, point to the findings and record in *Paramount* as prima facie evidence of defendants' illegal activities in conspiring to create a monopoly in the distribution and exhibition of motion pictures in the New York area. Moreover, plaintiffs assert that their limited participation in the illegal activities was not undertaken voluntarily, but rather that they were coerced by larger theatre circuits who could use their great buying power successfully to negotiate such illegal agreements.

To succeed on their motion for summary judgment, defendants must show:

1. that *in pari delicto*, in some form, is a good defense at law.

2. that the facts alleged in defendants' supporting papers and exhibits establish fully the elements of that defense.

3. that the facts alleged in defendants' papers which establish such de-

fense are uncontroverted in that there exists no genuine, material issue of fact to be decided at a full trial on the merits.

In their briefs, the parties devote a great deal of argument to the question whether *in pari delicto* remains a viable defense at law after the Supreme Court's decision in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U. S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). There the Court declared:

"We therefore hold that the doctrine of *in pari delicto*, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action." (p. 140, 88 S.Ct. p. 1985.

After having made this flat and unequivocal statement of the law, the Court then went on to say:

"Respondents, however, seek to support the judgment below on a considerably narrower ground. They picture petitioners as actively supporting the entire restrictive program as such, participating in its formulation and encouraging its continuation. We need not decide, however, whether such truly complete involvement and participation in a monopolistic scheme could ever be a basis, wholly apart from the idea of *in pari delicto*, for barring a plaintiff's cause of action, for in the present case the factual picture respondents attempt to paint is utterly refuted by the record." (p. 140, 88 S.Ct. p. 1985)

Lower courts, commentators and brief writers have since struggled to determine what, if anything, is left of the *in pari delicto* defense in light of the second excerpt quoted above: Morton v. National Dairy Prods. Corp., 287 F.

---

* In view of the interminable length of this controversy and the enormous amount of time expended by all parties, and especially in light of the conclusion which we come to here, we have been tempted to look to the poets for guidance and for reassurance that these efforts

were well spent. T. S. Eliot has expressed these sentiments.
"We shall not cease our exploration
And the end of all our exploring
Will be to arrive where we started
And know the place for the first time."

Supp. 753 (E.D.Pa.1968), aff'd., 414 F. 2d 403 (3rd Cir. 1969) cert. denied 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970); Purex Corp., Ltd. v. General Foods Corp., 318 F.Supp. 322 (C.D.Cal. 1970); Premier Electrical Construction Co. v. Miller-Davis Co., 292 F.Supp. 213 (N.D.Ill.1968), rev'd., 422 F.2d 1132 (7th Cir. 1970), cert. denied 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970); Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3 (4th Cir. 1971); South-East Coal Company v. Consolidation Coal Company, 434 F.2d 767 (6th Cir. 1970); Semke v. Enid Automobile Dealers Ass'n, 456 F.2d 1361 (10th Cir. 1972); SCM Corp. v. Radio Corp. of America, 407 F.2d 166 (2nd Cir. 1969). Although the Second Circuit has not had the precise problem before it in an antitrust case, it commented in Pearlstein v. Scudder & German, 429 F.2d 1136 (2nd Cir. 1970) that:

> "Although *Perma Life* would apparently continue to deny recovery to plaintiffs who had not been coerced but who had benefited from the arrangement equally with the defendant, such a defense does not appear desirable in the securities area . . ." (p. 1141).

See also Wohl v. Blair & Co., 50 F.R.D. 89 (SDNY 1970); Nathanson v. Weis, Voisin, Cannon, Inc., 325 F.Supp. 50 (SDNY 1971). It seems clear that the opinion of the Court in *Perma Life*, while abolishing the defense of *in pari delicto*, has left open the question whether there could be some defense, "wholly apart from the idea of *in pari delicto*", based upon a concept of complete involvement and participation in the unlawful scheme.**

■■ To come within the kind of factual situation which gave rise to the question which the Court in *Perma Life* found it unnecessary to decide and which was dealt with in some detail in the four concurring opinions, defendants must demonstrate that plaintiffs' participation in the conspiracy reached the same degree of involvement and culpability as that of defendants and that plaintiffs, deliberately and of their own volition, actively supported the illegal scheme for their own self-interest. The evidence presented on this motion, however, does not justify summarily concluding that it should be granted, even if the undecided question in *Perma Life* is answered as one or another of the concurring opinions would do so. There are serious disputes as to the issues of participation and coercion, including the intentions and motivations of the party. As a general proposition, summary judgment is more likely than not to be inappropriate when issues of intent and motive are material. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

With respect to all the acts alleged, including illegal division of territories, enforcement of unreasonable runs and clearances, fixing of admission prices, use of discriminatory license privileges, exclusion of independents from first runs and utilization of defendants' monopoly powers to force plaintiffs into disadvantageous pools and sales, materi-

---

** Indeed, the holding in *Perma Life* reaffirms the policy previously expounded by this Court of allowing private parties to prosecute claims, despite their involvement in the alleged illegal activities, where the effect is to vindicate the public interest. As Judge Weinfeld noted in Trebuhs Realty Co. v. News Syndicate Co., 107 F.Supp. 595 (SDNY 1952),

> ". . . 'Courts of equity may . . . go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.' More specifically, public policy may preclude an application of the doctrine of 'unclean hands.' Whatever equities may be present as between private litigants, they must yield to the overall public policy of the antitrust laws to prevent monopolies and restraint of trade (citations omitted). [§ 599]."

al questions of fact remain to be resolved at trial.

For example, although defendants have demonstrated that there are affiliations and connections between the plaintiff corporations' officers, directors and shareholders and the defendants in *Paramount* there remain serious questions as to the extent and nature of these relationships. The facts show that Skouras operates a chain of movie houses in and around New York City. During the relevant period, one-half of the stock of Skouras Theatres Corporation was owned by Metropolitan Playhouse, Inc., the other half of the stock was owned by members of the Skouras family. The controlling stock interest in Metropolitan was owned by United Artists Theatre Circuit, a company which had its origins with United Artists Corporation, a defendant in the *Paramount* case. George P. Skouras was at all relevant times President of Metropolitan and of United. During the relevant period he was a director and also an officer of Skouras Theatres. However, defendants have not adduced any substantial evidence that as a result of these relationships plaintiffs voluntarily joined with the defendants as substantially equal partners in the illegal schemes proscribed by the Court in *Paramount*.

Moreover, there is a direct conflict in the evidence as to whether the plaintiffs voluntarily participated in franchise and master agreements which enabled them to obtain first run products from defendant distributors for their theatres. The testimony of George P. Skouras tends to indicate that plaintiffs were coerced into these agreements as a matter of economic survival in the face of defendants' superior financial power in the movie theatre market. In contrast, the affidavit of Spyros Skouras tends to contradict the statements of George P. Skouras and suggests that plaintiffs themselves had sufficient economic strength successfully to negotiate joint operating arrangements so that they too might enjoy a share of the illegal profits.

Similarly, there is a dispute as to the manner in which various pooling agreements were effected between the defendants and plaintiffs. It is not contested that such agreements existed, but, again, the record is replete with conflicting testimony as to whether these were voluntary or coerced arrangements.

We recognize that

". . . summary judgment should be employed with equal regard to the rights of plaintiffs and defendants by requiring that a party opposing a motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial.'" Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

Yet considerable weight must be afforded to the admonition of the Supreme Court in Poller v. Columbia Broadcasting System, Inc., *supra*, 368 U.S. p. 473, 82 S.Ct. p. 491. In antitrust cases where factual questions play important roles, summary procedures should be avoided.

Plaintiffs' affidavits and exhibits in opposition to defendants' motion clearly controvert defendants' supporting papers. Since there remain serious and substantial questions of fact to be resolved, the motion for summary judgment is denied. The counter-motion for summary judgment which plaintiffs made orally at the argument on defendants' motion is also denied because there exist genuine issues as to material facts.

It is so ordered.