Anthony L. HART, et al., Plaintiff,

v.

Leroy BACA; et al., Defendants.

No. 01–01866 DDP SHX.

United States District Court,
C.D. California.

Nov. 9, 2001.

Stephen Yagman, Yagman & Yagman & Reichmann, Venice Beach, CA, Richard H. Millard, Los Angeles, CA, for plaintiff.

Louis R. Miller, Kevin J. Leichter, Christiansen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, CA for defendants Michael Antonovich, Yvonne Burke, Donald Knabe, Gloria Molina, and Zev Yaroslavsky, Michael Allen, David Lawrence, Franscell, Strickland, Roberts & Lawrence, Pasadena, CA for defendant Leroy Baca.

### ORDER RE MOTION TO STRIKE DEFENDANTS' NINTH AFFIRMATIVE DEFENSE

PREGERSON, District Judge.

This matter comes before the Court on the plaintiff's motion to strike the defendants' Michael Antonovich, Yvonne Burke, Deane Dana, Donald Knabe, Gloria Molina, and Zev Yaroslavsky (collectively the "Supervisor Defendants") ninth affirmative defense, which states: "The Supervisor Defendants are entitled to absolute immunity to the extent that their acts alleged in the Complaint were legislative in nature." (Def's Answer ¶ 23.)

## I. Background

The plaintiff filed the First Amended Complaint ("FAC") in this matter on August 2, 2001. The plaintiff alleges, among other things, that he was illegally over-detained in the Los Angeles County Jail after a superior court judge ordered that he be released. (FAC ¶ 10.) The Supervisor Defendants in this action are Los Angeles County Supervisors.

## II. Discussion

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(f), the Court may strike "any insufficient defense" from a defendant's answer. Fed.R.Civ.P. 12(f). "To strike an affirmative defense, the moving party must convince the court that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Securities & Exchange Comm'n v. Sands*, 902 F.Supp. 1149, 1166 (C.D.Cal.1995) (internal quotation and citation omitted). "As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice. Accordingly, courts often require a showing of prejudice by the moving party." *Id.* (internal quotations and citations omitted).

While disfavored, "where [a] motion [to strike] may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *California v. United States*, 512 F.Supp. 36, 38 (N.D.Cal. 1981). "[I]f the defense here asserted is invalid as a matter of law, such determination should be made now, in order to avoid the needless expenditures of time and money in litigating" the defense. *Purex Corp. v. General Foods Corp.*, 318 F.Supp. 322, 323 (C.D.Cal.1970).

### B. Analysis

The plaintiff contends that the Supervisor Defendants' ninth affirmative defense for absolute legislative immunity is insufficient as a matter of law based on the Ninth Circuit's decision in *Trevino v. Gates*, 23 F.3d 1480 (9th Cir.1994), and its progeny. The FAC appears to set forth two different theories as the bases for the Supervisor Defendants' liability in this action. First, the FAC alleges that prior decisions by the Supervisor Defendants to indemnify county sheriffs from punitive damage awards were made in bad faith and proximately caused a violation of the

plaintiff's constitutional rights.[1] Second, the FAC alleges that the Supervisor Defendants failed to adequately train, supervise, and discipline sheriff's deputies, and that these omissions proximately caused the plaintiff's injuries.[2]

### 1. *Rule 11*

The defendants argue that the ninth affirmative defense of absolute legislative immunity is asserted as part of a good faith effort to reverse *Trevino I. See* Fed.R.Civ.P. 11(b)(2). Federal Rule of Civil Procedure 11 provides in part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, ... an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

Fed.R.Civ.P. 11(b)(2).

■ The Court finds that, contrary to the plaintiff's assertions, Rule 11 does not require an express statement that the defense is being asserted to change the law. Therefore, the Court finds that the Supervisor Defendants' ninth affirmative defense is properly pleaded.

### 2. *Trevino Is Not Overruled*

■ Under one theory of liability asserted in the FAC, the plaintiff alleges that the Supervisor Defendants are liable for previously voting to indemnify damage awards against Sheriff's deputies. The defendants acknowledge that *Trevino* holds that the act of voting to indemnify punitive damage awards falls outside the cloak of protection offered by absolute immunity. *Trevino,* 23 F.3d at 1483. The defendants contend, however, that the Supreme Court's ruling in *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), effectively overrules *Trevino,* and establishes the Supervisor Defendants' rights to absolute legislative immunity.

In *Trevino,* the Ninth Circuit held that city council members who voted to indemnify specific punitive damage awards against certain police officers pursuant to California Government Code 825(b) were not entitled to absolute legislative immunity. 23 F.3d at 1483. The court reasoned that "an act which applies generally to the community is a legislative one, while an act directed at one or a few individuals is an executive one." *Id.* at 1482 (internal quotation and citation omitted).

In *Bogan,* the Supreme Court found that local legislators who voted to eliminate a department of government had absolute, legislative immunity for their actions, notwithstanding that their votes were due to their allegedly racially discriminatory animus and desire to retaliate against the department head for her exercise of her First Amendment rights. 523 U.S. at 56, 118 S.Ct. 966. The Court rejected the lower courts' reason-

---

**1.** "[I]t is alleged that prior decisions, if any, to pay for, or to indemnify for, or to hold harmless for, punitive damages assessed by juries against police is a basis for liability in this case, as it constitutes conduct that falls within the definitions of the first sentence of this averment, as does prior payment of monies by County and any of its officials and/or employees to plaintiff as a result of wrongful conduct by defendants County, Block, and Unknown Named Defendants." (FAC ¶ 9.)

**2.** Each defendant "in his/her official capacity knowingly, or grossly negligently, or with deliberate indifference to the rights allegedly violated ... took no action to correct, an official policy...of permitting the occurrence of the catego-

ries of wrongs set forth in this pleading ... failed properly to train, to supervise ... to take corrective action with respect to the police and with respect to the types of wrongful conduct alleged in this pleading ....

[I]t is also alleged that prior failures to investigate police misconduct and/or to discipline police found culpable for misconduct, inadequate investigations and/or inadequate discipline imposed for police misconduct, and/or a failure to investigate or to discipline the police defendants in this case for the alleged misconduct in this case, all make the defendants other than the police officers liable for the police misconduct in this case." (FAC ¶ 9.)

ing that the measure passed by the city council was an individually targeted administrative act, rather than a legislative elimination of that position. The Supreme Court concluded that whether an act is legislative turns on the nature of the act, rather than the motive of the official performing it. *Id.* at 45, 118 S.Ct. 966. The defendants contend that *Bogan* overrules *Trevino* because the Supreme Court has now established that a local legislator's vote is a "quintessentially legislative act."

The Court finds that *Trevino* is distinguishable from *Bogan* on several grounds. Most obviously, the local legislative action at issue in *Bogan* involved the elimination of a government office and not the indemnification of police for punitive damages awards. Second, in *Trevino,* the court found that the legislators' "decisions to pay punitive damages ... [were] individually, not generally, directed, [and] involve[d] no broad policy considerations." 23 F.3d at 1483. Therefore, the decision to indemnify deputies did not reflect a policymaking decision implicating the city's budgetary priorities and the services provided to the city's constituents. Instead, the legislators' actions were found to be ad hoc, non-legislative, and individually targeted decisions. In contrast, the Supreme Court found that the local officials' actions at issue in *Bogan* "reflected a discretionary, policymaking decision implicating the city's budgetary priorities." *Bogan,* 523 U.S. at 55–56, 118 S.Ct. 966. Thus, unlike the legislators in *Trevino,* the local officials in *Bogan* were acting to formulate policy for the local government entity. It was this fact that mitigated in favor of the Court's finding that the local officials in *Bogan* had acted in a legislative capacity.

Finally, *Bogan* instructs that the question of whether a given action is legislative in nature can only be answered by looking both at the form and the substance of the action. In order to determine whether a legislator's action is substantively legislative, the *Bogan* Court focused not only on whether the measure reflected a discretionary policymaking decision but also on the prospective scope of the measure's impact. The Court found that the ordinance involved the termination of a position, which, unlike the hiring or firing of a particular employee, could have prospective implications that reached well beyond the particular occupant of the office. Because the measure had prospective implications which reverberated beyond the current occupant of the office, the Court found that the action was legislative in substance. Therefore, what further distinguishes *Trevino* from *Bogan* is that the indemnification votes at issue in *Trevino* did not have prospective implications "that reach well beyond" the particular officer who the Supervisor Defendants voted to indemnify.

The Court finds that *Trevino* is not overruled by *Bogan.* Therefore, any claims for absolute legislative immunity relating to indemnification votes that the Supervisor Defendants may have made are barred.

### 3. *Non–Indemnification Related Conduct*

■ The FAC further alleges that the Supervisor Defendants failed to adequately train, supervise, and discipline Sheriff's deputies, and that these omissions proximately caused the plaintiff's constitutional injuries. Although the FAC does not identify what specific actions the Supervisor Defendants allegedly took (or failed to take) in this regard, it must be presumed that the alleged conduct involves votes since, as members of a legislative body, the Supervisor Defendants can only act through their votes. The defendants contend that to the extent that such conduct involves votes, the defense of absolute legislative immunity must apply because *Trevino* creates at most a narrow exception to absolute legislative immunity for indemnification votes.

The defendants are correct that *Trevino* concerned only a legislator's vote to indemnify punitive damage awards. The plaintiff's theories of liability against the Supervisor Defendants in this case include not only indemnification votes but also their alleged role in the failure to properly train and discipline Sheriff's deputies. The defense of absolute legislative immunity is therefore appropriate with respect to any legislative acts other than conduct alleged to involve legislators' indemnification votes.

### III. Conclusion

For the reasons stated above, the Court grants the plaintiff's motion to strike the ninth affirmative defense to the extent that the defense relates to any alleged indemnification votes that the Supervisor Defendants may have cast. The Court finds that the defense of absolute legislative immunity is appropriate, however, with respect to the Supervisor Defendants' legislative acts. In short, to the extent that the defense relates to any conduct other than indemnification votes, the Court denies the plaintiff's motion and finds that the ninth affirmative defense is properly pleaded and legally sufficient.

IT IS SO ORDERED.