In re Edmond R. LEACH, II, Bankrupt.

**UNITED BANK & TRUST COMPANY OF MARYLAND, Plaintiff,**

v.

**Edmond R. LEACH, II, Defendant.**

**Bankruptcy No. 78–00032 G.**

United States Bankruptcy Court,
D. Maryland.

Jan. 15, 1980.

Ira C. Wolpert, Washington, D. C., for plaintiff.

Philip J. McNutt, Mark S. Goldstein, Silver Spring, Md., for bankrupt/defendant.

STATEMENT OF FACTS AND CONCLUSIONS OF LAW ON COMPLAINT OF UNITED BANK & TRUST COMPANY OF MARYLAND OBJECTING TO DISCHARGE OF BANKRUPT

GLENN J. GOLDBURN, Bankruptcy Judge.

## STATEMENT OF FACTS

There remains a balance of $17,516.01 on a judgment obtained by the plaintiff against the bankrupt in a State Court. After the bankrupt's bank account was attached by the plaintiff, and within one year of the filing of the bankruptcy petition, the bankrupt gave all of his income from his dental practice and rental properties to his wife. She deposited the income in a joint checking account on which only the wife and their son were signatories. From this account was paid all of the expenses of the bankrupt's dental practice and expenses of the jointly owned rental property together with other joint bills and living expenses. Previous to the opening of the account, the bankrupt had deposited his income and paid expenses from an account on which he was the signatory, although the account of the wife and son had been in existence prior to the attachment. Counsel stipulated that the bankrupt was insolvent for the entire year prior to the filing of the petition. The plaintiff filed a complaint objecting to the discharge of the bankrupt under Section 14(c)(4) of the Bankruptcy Act.

## CONCLUSIONS OF LAW

Section 14(c)(4) of the Bankruptcy Act provides that a discharge will be denied where a bankrupt, within twelve (12) months of filing a bankruptcy petition, "transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors." The effect of depositing the funds in a separate account was that it prevented further attachment of the bankrupt's income, because he was not a signatory on the account, and it also enabled him to continue to meet any obligations which he instructed his wife to pay.

Although this section is to be construed liberally in favor of the bankrupt, it certainly should not be carried to the extent of rewarding the bankrupt who has withheld property which should be applied to the payment of his debts. *Kaganowitz v. Manufacturers Trust Company*, 145 F.2d 754 (2d Cir. 1944); *Harris v. Baker*, 86 F.2d 936 (9th Cir. 1936). The case law does not specify how many creditors must be affected so the bankrupt's contention that some creditors were paid and that only the plaintiff was affected, is without merit. The bankrupt also contends that the Court must make a finding of an intent to defraud and there is some authority for following that reasoning. *In re Julius Bros.*, 217 F. 3 (2d Cir. 1914). The Act, however, states that if the bankrupt did any of the things forbidden by Section 14(c)(4) "with intent to hinder, delay *or* defraud his creditors" (emphasis supplied), his discharge will be denied, which leads the Court to conclude that a finding of fraud is not required. If the Court concludes that the intent to hinder or delay .exists, it appears that there are sufficient grounds for denial of the discharge

according to 1A *Collier on Bankruptcy*, Par. 14.47 n. 1 (1976) and cases cited therein. The manifest purpose of the section is obviously to prevent a discharge of bankrupts who have attempted to prevent collection of their debts by concealing or otherwise disposing of their assets. See *Kaganowitz, supra.* Although the Court is of the opinion that a finding of fraud is unnecessary under Section 14(c)(4), the Court could conclude that the bankrupt had a fraudulent intent from the facts that the bankrupt had previously paid the expenses of his dental practice, for a period of approximately twenty (20) years, from an account on which he was the only signatory, and that the wife and son's account was not used by the bankrupt until immediately after the attachment on his account was laid.

In *In Re Magenis*, 6 C.B.C. 527 (D.Or.1975), Judge Sullivan held that where a creditor has garnished a bankrupt's bank accounts, an attempt by the bankrupt to continue banking through new accounts opened in his wife's name, is a transfer of funds in violation of Section 14(c)(4). The fact that the wife's accounts in *Magenis* were new ones while in the instant case the wife's account was already in existence, is irrelevant, because the effect of preventing further attachment is the same in both cases. Judge Sullivan stated in *Magenis*, 6 C.B.C. at 530: "Where a bankrupt makes transfers in order to place assets in other names, converts other assets to cash, and avoids deposits to his own account for the purpose of avoiding attachments, he hinders and delays and defrauds his creditors, even though he states that he wishes to pay his obligations. *Elliot v. Herrera*, 401 F.2d 174 (9th Cir. 1968). The transfer of assets to relatives or to a spouse for the purpose of avoiding the collection efforts of certain creditors constitutes a violation of Section 14(c)(4), if the funds were used for personal use, even though the transferees may have had claims against the bankrupt. *In re Gurney*, 71 F.2d 144 (2d Cir. 1934); *In re Richter*, 57 F.2d 159 (2d Cir. 1932); *Tibbs v. Caterinacci*, 191 F.2d 957 (4th Cir. 1951); *Matter of Patrizzo*, 105 F.2d 142 (2d Cir. 1939). Even the withdrawal of cash from a bank account with the intent to avoid attachment in a bankruptcy action constitutes a violation of Section 14(c)(4) in spite of the fact that funds were paid to creditors. *Losner v. Union Bank*, 374 F.2d 111 (9th Cir. 1967)."

The Court concludes that the bankrupt transferred and permitted to be removed some of his property with the intent to hinder and delay his creditors within twelve (12) months preceding the filing of the petition and will enter an Order denying his discharge.