In re Leonard D'AVIGNON d/b/a
Leonard D'Avignon & Sons
Trucking, Debtor.

Thomas GORSKY, Plaintiff,

v.

Leonard D'AVIGNON d/b/a Leonard
D'Avignon & Sons Trucking,
Defendant.

Bankruptcy No. 81–33.
Adv. No. 82–0089.

United States Bankruptcy Court,
D. Vermont.

Nov. 24, 1982.

Neal C. Vreeland, Buffalo, N.Y., for plaintiff.

John R. Barrera, Middlebury, Vt., for defendant.

## MEMORANDUM AND ORDER REGARDING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CHARLES J. MARRO, Bankruptcy Judge.

The plaintiff filed a motion for partial summary judgment as to three counts in his complaint to Determine Dischargeability as follows, viz.:

1. Failure to explain loss of assets.
2. Partnership liability i.e. the liability of a general partner is not dischargeable.
3. Concealment of assets.

This adversary action arises out of the Complaint to Determine Dischargeability and objecting to Discharge filed by Thomas Gorsky, on May 29, 1981. The gravamen of the plaintiff's complaint arises from a series of transactions among the Debtor, Leonard D'Avignon, Marcel Page and the Plaintiff, Thomas Gorsky. Subsequent actions were taken by the parties to effect discovery, and based upon the information made available, the plaintiff filed a Motion for Summary Judgment on June 11, 1982. The motion was accompanied by his memorandum and affidavit. The Debtor responded with a memorandum and affidavit on June 24, 1982, with the plaintiff's final reply memorandum being filed on June 30, 1982. It is at this posture that the case currently stands.

## STATEMENT OF FACTS

In August of 1980 the Debtor and Marcel Page contacted the plaintiff in regards to setting up an arrangement for the purchase of high moisture corn as produced on the plaintiff's farm. The debtor sought to purchase corn for the purpose of transporting and selling it to farmers in the State of Vermont. (D'Avignon deposition p. 87–93, hereinafter cited as "D.D.").

The debtor was introduced to Gorsky by Marcel Page, who had previously dealt with Gorsky in a similar transaction during the harvest of 1979. (D.D., p. 90 and Gorsky affidavit, p. 1). In the course of making the arrangements on Gorsky's farm in Stillwater, New York, it was represented to Gorsky that the debtor and Page were "going to establish a joint checking account," and that they "were going to more or less form a partnership." (D.D. 93). These statements were made to assure the farmers that "they were going to be paid." (D.D. 93).

From September 21, 1980 through November 13, 1980, the debtor and Page in purchasing corn from various New York farmers had set out separate sales areas with Vermont highway Route 7 being the dividing line (D.D. 89). During the course of his business the debtor kept all of his corn purchases, with one exception, recorded in his Merchants Bank check register. (D.D. 14). He further kept all receipts from corn sales, again with one exception, recorded in the check register and deposited

such sale proceeds in the Merchants Bank. (D.D. 69).

On November 10, 1980 the debtor issued a check to Gorsky in the amount of $12,696.39 for corn purchases of October 31, 1980, November 1, 1980 and November 4, 1980. These purchases were transported by Pierre Page (Marcel Page's driver), Harold Manning and Tom Brown (D'Avignon's drivers). Subsequently, the November 10, 1980 check was dishonored and returned to Gorsky for non-sufficient funds. (D.D. 29, 56).

In the period of November 3, 1980 through November 13, 1980, twelve additional purchases were made from Gorsky. Of these twelve loads Pierre Page transported six: Harold Manning transported four: and the debtor transported one. (Exhibit A, Gorsky affidavit). Of the six loads transported by Pierre Page, only one was delivered to the debtor's customer, Leo Bean. The remaining deliveries in the transaction with Mr. Bean were made by Harold Manning and the debtor himself. (D.D. 106–107).

The debtor's final sale of corn was to Jim Minor of Brandon, Vermont. This sale involved 82.2 tons of corn delivered by Harold Manning. It resulted in the one exception in the debtor's Merchants Bank check register. (D.D. 45, 107).

The exception arose when Mr. D'Avignon cashed the check from the sale to Minor and obtained two cashier's checks. He applied the cashier's checks to a prior corn purchase debt, as well as, to a truck leasing debt. (D.D. 45, 46). This change in procedure stemmed from a levy placed upon Mr. D'Avignon's checking account by the Internal Revenue Service. (D.D. 44–48, 97–100, 103).

## QUESTION PRESENTED

The plaintiff, Thomas Gorsky, has moved the Court pursuant to F.R.C.P. 56(a) for summary judgment denying the Defendant-Debtor a discharge and/or exempting the Plaintiff's debt from discharge. The plaintiff asserts three arguments in support of a judgment in his favor, i.e. (1) the Defendant-Debtor has failed to explain satisfactorily a substantial loss of assets under 11 U.S.C. § 727(a)(5); (2) the Defendant-Debtor, as a general partner of a partnership by estoppel, is not entitled to a discharge, since he is not an individual within U.S.C. § 727(a)(1); (3) that the Defendant-Debtor has transferred, removed, destroyed, or concealed his property within one year prior to the filing of the petition, with the intent to hinder, delay, or defraud a creditor under 11 U.S.C. § 727(a)(2).

## I. WHETHER THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF, THOMAS GORSKY.

The plaintiff, Thomas Gorsky, has moved the Court for summary judgment alleging that there is no genuine issue as to the material facts of the case. The determination of whether to find in favor of the movant can only be made after considering the general nature of summary judgment and each of the legal theories submitted by the plaintiff.

The primary purpose of a motion for summary judgment is to avoid a useless trial. Summary judgment is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir., 1972). Rule 56 of the Federal Rules of Civil Procedure was clearly intended to be used to pierce allegations of pleadings and allow the trial court to dispose of a case in advance of a hearing on the merits, when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact. *Bryant v. Kentucky*, 490 F.2d 1273 (6th Cir., 1974).

In the instant case, the plaintiff has presented a thorough presentation of the factual basis in support of his theories for judgment through affidavits, deposition, and detailed documentary memoranda. It is at this point that Mr. D'Avignon's reply must be considered, especially in view of

the recent decision of the United States Court of Appeals for the Second Circuit in *United States of America v. Potamkin Cadillac Corporation,* 689 F.2d 379 (1982). In *Potamkin,* the Court stated:

Rule 56(e) of the Federal Rules of Civil Procedure states unequivocally that in order to defeat a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Such issue is not created by a mere allegation in the pleadings, *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir.1970); *Korinis v. Sealand Services, Inc.,* 490 F.Supp. 418, 422 (S.D.N.Y.1980), nor by surmise or conjecture on the part of the litigants, *Nemo v. Allen,* 466 F.Supp. 192, 195 (S.D. N.Y.1979). As this Court has more recently stated in *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980):

The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. See *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187–188 (2d Cir.1978), cert. denied, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1979). The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial. *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Rather, he must bring to the district court's attention some affirmative indication that his version is not fanciful.

With this standard in mind, consideration is to be given to each theory of the plaintiff.

A. HAS THE DEBTOR–DEFENDANT FAILED TO EXPLAIN SATISFACTORILY A SUBSTANTIAL LOSS OF ASSETS UNDER 11 U.S.C. § 727(a)(5).

■ The plaintiff has alleged the Debtor has failed to explain satisfactorily a substantial loss of assets, and therefore, is not entitled to a discharge by reason of 11 U.S.C. § 727(a)(5). In order to prevail on this theory, the Plaintiff must prove the following: 1) that there are assets which should be there, but are missing; 2) that a request for an explanation of the disposition of the assets has been made, and; 3) the debtor has failed to give a satisfactory explanation.

In the instant case, the plaintiff has attempted to prove that the Debtor had additional assets which have not been accounted for through a review of the corn sales by the plaintiff to the Debtor, additional purchases of corn by Mr. D'Avignon, through his Merchants Bank check register, and the resales of such corn as recorded in the debtor's check register as deposits.

As determined by the plaintiff, the debtor, with Mr. Page, purchased from the plaintiff approximately 1,284.94 tons of high moisture corn. The plaintiff further determined from the check register that the debtor purchased 1,011.39 tons of corn from other farmers, making for total purchases of 2,296.33 tons. The plaintiff then reviewed the debtor's resales of corn, as reflected by the check register, and determined that the debtor had accounted for 2,033.11 tons of corn, leaving 263.22 tons of corn, or approximately 10 truckloads unaccounted for, the approximate value of ten truckloads of corn being $30,000.00 (Plaintiff Memorandum).

In arriving at its conclusions, the plaintiff has not only failed to consider the debtor's account of six truckloads of corn sold to Marcel Page directly, but has attempted to proverbally add apples and oranges together.

The debtor explained that at least six deliveries of corn were handled by Pierre Page for his father, Marcel Page, these purchases being respectfully on October 20, 1980, and during November 5, 1980 through November 11, 1980. (D.D. 77, 106–107), this explanation accounting for six of the ten truckloads found in the plaintiff's records (Plaintiff's affidavit, Appendix A), but not reflected in the debtor's check register.

A second weakness in the plaintiff's conclusions arises from the unrecorded resale

by the debtor to Jim Minor. The debtor stated that the transactions of November 12, 1980 and November 13, 1980, being the purchases of three truckloads of corn from the plaintiff, were to complete the resale to Jim Minor. (D.D. 106–107). These three purchases were reflected in the plaintiff's records, however, they were not recorded in the debtor's check register. It was further established that the proceeds from the resale to Jim Minor were not recorded in the debtor's check register. (D.D. 45). It is at this point the infirmities in the plaintiff's calculations become apparent.

The plaintiff determined a portion of the debtor's purchases from the plaintiff and other farmers by a review of the debtor's check register. The plaintiff then set out the remaining purchases through a review of his own records, combining the sums to arrive at the debtor's total purchases. Yet, when the plaintiff determined the total resales, he did so by only using the debtor's check register, thereby ignoring the resale to Jim Minor. The plaintiff then alleged that the unrecorded purchase and resale created "an accounting wash." That is totally inaccurate.

The use of the plaintiff's records resulted in the inclusion of the purchases by the debtor for the resale to Jim Minor, however, by failing to consider the proceeds from that resale in determining the total resales, the alleged substantial loss of assets was created. When the proceeds from the resale to Mr. Minor are applied against the plaintiff's records, less than one truckload of corn remains unaccounted for.

■ Therefore, not only does it instantly appear that the plaintiff has failed to meet its burden establishing the grounds to oppose the discharge under 11 U.S.C. § 727(a)(5), but any material fact concerning the loads transported by Pierre Page during the period of November 5, 1980 through November 11, 1980, is still a genuine issue. As such, the motion for summary judgment should not be granted upon the grounds of 11 U.S.C. § 727(a)(5).

## B. DOES THE DEBTOR'S ALLEGED LIABILITY AS A GENERAL PARTNER, OF A PARTNERSHIP BY ESTOPPEL, SUFFICIENT GROUNDS TO OPPOSE A DISCHARGE IN THE DEBTOR'S INDIVIDUAL CASE?

The plaintiff has opposed the discharge of the debtor on the grounds that since a partnership is not entitled to a discharge under 11 U.S.C. § 727(a)(1), then the partners, as individuals, are not entitled to a discharge, the foundation of this argument being based on the language in section 727(a)(1) that: "The court shall grant the debtor a discharge, unless— (1) the debtor is not an individual:"

■ The plaintiff in asserting these grounds has failed to realize that it is not the alleged D'Avignon/Page partnership which has filed a petition in bankruptcy, but rather it is the petition of Leonard D'Avignon, as an individual. This is an important distinction in that while a partnership entity is not entitled to a discharge under section 727(a)(1); there is nothing in the Code to prevent the individual partner from receiving one. Without this distinction, the "fresh start" concept would be effectively thwarted for anyone unlucky enough to be a member of a failing partnership.

■ Although the plaintiff has presented indicia of a partnership by estoppel under 11 V.S.A. 1208, through the plaintiff's own affidavit, and the deposition of the debtor, (D.D. 88–90); there has also been a sufficient presentation of evidence to reach a contrary result. This evidence being in the nature of the excerpts from the deposition of Marcel Page; the deposition and affidavit of the debtor; and the extent of corn purchases transported by Pierre Page. It is through this contrary evidence that the material facts concerning the alleged partnership continue to create a genuine issue for trial. The contrary evidence also seems to indicate that the debtor's allegation are not merely conjecture or fanciful.

Therefore, it appears the debtor has set forth specific facts in opposing the motion for summary judgment which would create

a genuine issue for trial, and as such the motion for summary judgment should not be granted.

### C. WHETHER THE DEFENDANT–DEBTOR HAS TRANSFERRED, REMOVED, DESTROYED OR CONCEALED HIS PROPERTY WITHIN ONE YEAR PRIOR TO THE FILING OF THE PETITION, WITH THE INTENT TO HINDER, DELAY OR DEFRAUD A CREDITOR UNDER 11 U.S.C. § 727(a)(2).

 The plaintiff has asserted the second ground for objection to the discharge of the Debtor, as set forth in 11 U.S.C. § 727(a)(2). As stated in section 727(a)(2):

(2) the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutlilated, or concealed—

(a) property of the debtor, within one year before the date of the filing of the petition; . . .

The plaintiff's argument is based on the debtor's financial transactions with Jim Minor. In that transaction Mr. Minor presented the debtor a check in payment for the sale of corn. The debtor then cashed the check and applied the proceeds toward purchasing two cashier's checks, which were subsequently used to pay other creditors.

The plaintiff highlights this transaction on the basis that the debtor had cashed the check rather than deposited it in his Merchants Bank checking account, as was his procedure in the past. (D.D. 45–46). The debtor further indicated in his affidavit that he had done so in order to pay certain creditors, rather than depositing the proceeds into his account and having the Internal Revenue Service obtain them by levy. (Debtor's affidavit, p. 2). On the basis of those actions, the Plaintiff has asserted the debtor transferred or concealed the assets with the intent to hinder or defraud a creditor. In support of its position the plaintiff cited *In re Leach,* 1 B.R. 775 (Bkrtcy.1980).

In *Leach,* a creditor filed a complaint objecting to the discharge of the debtor based on Section 14(c)(4) of the Bankruptcy Act. The court in denying the discharge, held that where the debtor had previously paid his business expenses from his own checking account, and did not use a joint account of his wife and son until after a creditor attached the debtor's bank account, the circumstances warranted a finding that the property was transferred with the intent to hinder or delay a creditor. The court in reaching its decision noted that while a finding of fraud might not be required, the requisite intent to hinder or delay must exist. In finding this intent, the court cited *In re Magenis,* 6 C.B.C. 527 D.Or., (1975), and the court's language at 530:

Where a bankrupt makes transfers in order to place assets in other names, converts other assets to cash, and avoids deposits to his own account for the purpose of avoiding attachments, he hinders and delays and defrauds his creditors, even though he states that he wishes to pay his obligations. *Elliot v. Herrera,* 401 F.2d 174 (9th Cir.1968). The transfer of assets to relatives or to a spouse for the purpose of avoiding the collection efforts of certain creditors constitutes a violation of Section 14(c)(4), if the funds were used for personal use, even though the transferees may have had claims against the bankrupt. *In re Gurney,* 71 F.2d 144 (2d Cir.1934); *In re Richter,* 57 F.2d 159 (2d Cir.1932); *Tibbs v. Caterinacci,* 191 F.2d 957 (4th Cir.1951); *Matter of Patrizzo,* 105 F.2d 142 (2d Cir.1939). Even the withdrawal of cash from a bank account with the intent to avoid attachment in a bankruptcy action constitutes a violation of Section 14(c)(4) in spite of the fact that funds were paid to creditors *Losner v. Union Bank,* 374 F.2d 111 (9th Cir.1967).

In the instant case, the debtor did not transfer funds to a relative, nor did he withdraw cash from a bank account to avoid attachment, but instead he dealt with the proceeds from his sale to Jim Minor in the manner he best saw fit. Without more, the requisite intent to hinder or delay does not appear to exist. Further, questions of motive and intent are particularly inappropriate for summary adjudication. *Welt v. Koehring Co.,* 482 F.Supp. 437 (N.D.Ill.

1979); and as a general proposition, summary judgment is more likely than not to be inappropriate when issues of intent and motive are material. *Skouras Theaters Corp. v. Radio Keith-Orpheum Corp.*, 58 F.R.D. 357 (D.C.N.Y.1973).

It should also be remembered that the *Leach* court seemed to infer that if a debtor uses the allegedly concealed funds to pay his creditors, the requisite intent would exist. However, there is contrary authority to that position as noted in Collier's on Bankruptcy, par. 727.02, n. 12 (1979); and the cases cited therein.

As such, it appears that the question of the Debtor's intent to either hinder or delay his creditors cannot be definitely established from the pleadings as they currently stand. Therefore, a genuine issue of a material fact remains of which would prevent the granting of the Plaintiff's motion for summary judgment.

### ORDER

Upon the foregoing the Plaintiff's Motion for Summary Judgment is DENIED.