In re Leonard D'AVIGNON d/b/a
Leonard D'Avignon & Sons
Trucking, Debtor,

Thomas GORSKY, Plaintiff,

v.

Leonard D'AVIGNON d/b/a Leonard
D'Avignon & Sons Trucking,
Defendant.

Bankruptcy No. 81–33.
Adv. No. 82–0089.

United States Bankruptcy Court,
D. Vermont.

Feb. 2, 1983.

Neal C. Vreeland, Buffalo, N.Y., for plaintiff.

John R. Barrera, Middlebury, Vt., for defendant.

MEMORANDUM AND ORDER ON THE RE–ARGUMENT OF THOMAS GORSKY OF HIS MOTION FOR SUMMARY JUDGMENT

CHARLES J. MARRO, Bankruptcy Judge.

MEMORANDUM

On December 6, 1982, the Plaintiff, Thomas Gorsky, by his attorney, filed a Motion for Re-Argument of his Motion for Summary Judgment of June 11, 1982. The basis for the Plaintiff's motion is his belief that "the Court has misconstrued several undisputed facts" in the Court's Memorandum and Order of November 24, 1982. 25 B.R. 838 (Bkrtcy). The facts which the

Plaintiff asserts are undisputed concern the accounting of assets of the Debtor. The two areas which the Plaintiff asserts that the Court misconstrued the "undisputed facts" are; 1) the Plaintiff's charging the Defendant with proceeds of sales of corn to Jim Minor, but improperly crediting the Defendant for the resale proceeds thereof; and 2), the misapprehension that a number of truckloads of corn transported by Pierre Page never entered the Defendant's records, and therefore, the Defendant never had those assets.

In reaching the instant decision on the Plaintiff's re-argument, the Court will review the two areas of asserted "undisputed facts."

## I. THE SALES OF CORN TO JAMES MINOR

In support of its motion for re-argument, the Plaintiff asserts that the Court erred in its statement that the corn sold to James Minor was obtained from the Plaintiff.

As stated in the Memorandum and Order of the Court:

A second weakness in the plaintiff's conclusions arises from the unrecorded resale by the debtor to Jim Minor. The debtor stated that the transactions of November 12, 1980 and November 13, 1980, being the purchases of three truckloads of corn from the plaintiff were to complete the resale to Jim Minor. (D.D. 106–107) These three purchases were reflected in the plaintiff's records, however they were not recorded in the debtor's check register. (D.D. 45)

As stated by the Plaintiff in its Motion for re-argument:

By the defendant's own testimony however the corn which the defendant resold to James Minor was purchased from a Mr. Lathrop, a New York farmer. The truckloads of corn involved in the Latrop (SIC)-D'Avignon-Minor transactions were strictly "off the books." For those loads of corn, D'Avignon, by his own testimony paid Mr. Lathrop by cashier's check from the resale proceeds. Mr. Lathrop for these loads of corn, was not paid by a check drawn on defendant's business account. (Deposition of Leonard D'Avignon, pages 45–46)

While the Plaintiff has contended that the facts concerning the above sale are "undisputed," a review of the deposition of Leonard D'Avignon seems to contradict this alleged lack of dispute. Plaintiff relies on pages 45–46 of D'Avignon's deposition where it states:

Witness: After—As you know, after everybody got a hold of my checkbook here, it was a total disaster. I couldn't put—Anyways, I took a check—I did not deposit it in my account, I directly cashed it at the bank.

Q. Who was the check from?

A. It was from James Minor.

  *   *   *   *   *   *

Q. And you cashed the check directly?

A. Yes, and I got—I believe I got two certified checks.

Q. Or cashier's checks, maybe?

A. Yes.

Q. And who did you give those to?

A. One of them I had to pay for corn.

Q. To which farmer?

A. Lathrop.

However, as "undisputed" as the Plaintiff asserts the "wash" sale to be, the Plaintiff has failed to consider or direct the Court's attention to the disputing testimony found at pages 105 through 107 of the deposition.

On pages 106–107 of the deposition, the Plaintiff was questioning Mr. D'Avignon regarding purchases from the Plaintiff, reflected in Plaintiff's exhibit 5. As stated in the deposition:

Q. A load that you took out on November 11th, fifty-thousand three hundred pounds. Do you know where that went?

A. I took our myself. That went to Leo.

Q. Leo Bean? Another load on November 11th, Pierre Page. Do you know where that went?

A. No I can't—I don't know where it went.

Q. Three loads on November—two on November 12th and one on November 13th, Harold Manning. Do you know where they would have gone?

A. Two on the 12th.

Q. Right.

A. One on the 13th.

Q. All by Harold Manning

A. I think I had one or two to bring to Brandon to finish him up, and it probably went there

Q. Who was in Brandon?

A. Minor. I could ask him and find out and—I think he would remember.

While the above statements from the Defendant tend to show that some of the corn sales to James Minor were from the corn purchased from the Plaintiff; it is more important to note that the facts are not as clearly "undisputed" as alleged by the Plaintiff. As such, there still appears a genuine issue of fact as to warrant the denial of the motion for summary judgment. As such, the Court's Memorandum and Order of November 24, 1982 should stand.

## II. LEO BEAN PURCHASES

The Plaintiff, again, asserts that the Court was under a misapprehension regarding certain "undisputed facts" regarding six truckloads of corn handled by Marcel Page and his son, Pierre.

The Plaintiff has asserted that the facts regarding the deliveries to Leo Bean are "undisputed." These facts being that:

"1. Of the six truckloads of corn referred to by the court, *four,* not *one* were sold to Leo Bean

2. And the Defendant received the full sale proceeds therefor and deposited them to his business checking account.

3. The undisputed depositions and documentary evidence in the form of weight slips disclose that at least the following loads were delivered to Mr. Leo Bean.

| DATE | WEIGHT | DRIVER |
| --- | --- | --- |
| 11/5/80 | 48180 lbs. | Pierre Page |
| 11/6/80 | 48500 " | Pierre Page |
| 11/7/80 | 48660 " | Pierre Page |
| 11/10/80 | 54920 " | Harold Manning |
| 11/11/80 | 50300 " | Leonard D'Avignon |
| 11/11/80 | 50380 " | Pierre Page |

There is no question that the weight slips for the dates listed above for Pierre Page, indicate delivery to Leo Bean. However, the deposition of Leonard D'Avignon directly disputes those slips as well as a portion of D'Avignon's affidavit. As found in the deposition regarding the sales to Leo Bean, the Defendant stated:

105 A. No, Bean is who I sold corn to. He is the last customer here.

Q. I'm sorry. Now, that was deposited on November 13th?

A. Yes.

Q. All right. So that would have been corn that was delivered to Mr. Beam.—

A. Yes.

Q. —Before the 13th, on or before the 13th?

A. It had to be before the 13th.

Q. All right, Do you know which one of those loads on my Plaintiff's exhibit 5 it would have been, if at all?

A. Page brought one load there. He Had a bad time getting it to the farm, and I believe Harold Manning dropped two, and I dropped four.

Q. And what time span would those loads have been picked up?

106 A. Directly

Q. So Mr. Bean's check was for about four loads?

A. It would have been seven

Q. Seven?

A. Yes, One hundred and seventy five ton maybe six loads it would have been. I brought either three or four there myself.

Q. Referring to Plaintiff's 5, three loads of corn November 5th, 6th, and 7th drawn out by Pierre Page. Do you know what farmer that would have been sold to?

A. No, one load went to Bean, Could have been in that area.

Q. Load on November 10th, Harold Manning. Do you know where that would have gone?

A. That would have went to Bean.

Q. Two more on November 10th by Pierre Page. Do you know where that would have gone?

A. Definitely. He can't pick up two loads in one day and continue to St. Johnsbury, so one of them had to go somewhere else.

Q. But you don't know where?

A. No, I can't say off hand.

Q. A load you took out on November 11th, fifty thousand three hundred pounds. Do you know where that went?

A. I took out myself, that went to Leo.

Q. Leo Bean? Another load on November 11th, Pierre Page. Do you know where that went?

A. No I can't—I don't know where it went.

The Defendant further asserted in his affidavit at page 3:

An further, it is my suspicion and indeed my opinion that at least six of the loads in question were drawn by Pierre Page and done so for his own profit or the profit of his father Marcel Page (my deposition page 62). And further, Marcel Page drew two loads for himself, which I know nothing about (my deposition 64).

While the statements of the Defendant, as made above, are self serving, they should not merely be disregarded as has been done by the Plaintiff in order to make the facts "undisputed." The Defendant's statements are not merely "fanciful" and a genuine issue of fact appears to remain. This becomes especially apparent when consideration is made of the Plaintiff's supplemental documentary evidence and memorandum submitted on January 4, 1983.

In the supplementary evidence, the Plaintiff sets forth evidence brought out in a proceeding entitled *Gorsky v. Page*, conducted in Vermont Superior Court for Addison County, Docket No. S40–81Ac. In that proceeding it was established that Marcel Page obtained two truckloads which he appropriated the proceeds for his own benefit.

The Plaintiff, prior to the Addison County case, had asserted that Page had not appropriated any proceeds for himself, and that this fact was "undisputed." However, the Addison County proceeding, in fact, proved that there was some dispute as to Page's appropriations. It is facts in the nature of those set forth above, which led this Court to its finding that a genuine issue of fact remained. It is hard to imagine a clearer example of a genuine issue of fact than that in the instant case.

This Court recognizes that summary judgment is a drastic remedy and that it should resolve all doubts as to the existence of genuine issues of fact against the moving party. The Court will further view all inferences from the facts in a light most favorable to the parties opposing the motion. *Mid-South Grizzlies v. National Football League*, 550 F.Supp. 558 (E.D.Pa.1982); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1964).

As stated in *In re Rineer*, 22 B.R. 447 (Bkrtcy.N.D.Ill.E.D.1982);

The movant bears the burden of proving that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Thus, summary judgment may be denied even where the opposing party offers no evidence, if the movant fails to meet his burden. *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955, 965 (N.D.Ill.1972). Doubts as to the existence of an issue of fact are resolved in favor of the party opposing the motion. If different inferences and conclusions can reasonably be drawn from the facts offered, summary judgment should be denied. *Harvey v. Great Atlantic and Pacific Tea Co.*, 388 F.2d 123, 124–25 (5th Cir.1968). *See also, In re Chong*, 16 B.R. 1, 5 (Bkrtcy.Hawaii 1980).

In the instant case, the Court believes that the standards set forth herein and those stated in the Court's opinion of November 24, 1982, preclude the granting of

the motion for summary judgment. For summary judgment must be denied where there remains the slightest doubt as to any material fact. *United States v. Del Monte De Puerto Rico, Inc.,* 586 F.2d 870, 872 (1st Cir., 1978). There is no question that doubt remains regarding certain material facts in this case.

### ORDER

Upon the foregoing the Plaintiff's Motion for Summary Judgment on re-argument is DENIED.