In re CORPORATION OF WINDHAM
COLLEGE, Debtor.

Jerome I. MEYERS, Esquire,
Trustee, Plaintiff,

United States of America,
Intervenor/Plaintiff,

v.

TOWN OF PUTNEY, Defendant.

Bankruptcy No. 80–72.
Adv. No. 82–0173.

United States Bankruptcy Court,
D. Vermont.

July 19, 1983.

Jerome I. Meyers, Springfield, Vt., trustee, pro se.

William M. McCarty, Brattleboro, Vt., for Town of Putney.

Larwin Crispe, Brattleboro, Vt., for Vermont Nat. Bank.

John C. Moreland, Senior Trial Counsel, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

## INTRODUCTION

On October 18, 1982, the debtor's trustee in bankruptcy commenced this adversary proceeding to determine, pursuant to § 505 of the Bankruptcy Code, the debtor's liability with respect to the unsecured priority tax claim of the defendant, Town of Putney (the Town). The Town filed a proof of claim on June 5, 1980, as amended November 15, 1982. On November 4, 1982, the United States moved to intervene as a party plaintiff and the motion was granted with no objections made. On May 12, 1983, the debtor's trustee moved for summary judgment.

At issue on the motion are property tax assessments for the calendar years 1979 to 1983, inclusive, on the lands and buildings which comprise the campus of Windham College (the College) excluding the Fine Arts Building accorded tax exempt status by the Town pursuant to Vermont Statutes, title 16, section 3859 (1982). The amount at issue appears to exceed $1,000,000.00 consisting of real estate taxes as assessed, interest thereon at 1% per month from the date of assessment, and a statutory late-payment penalty of 8% of the assessment.

The motion for summary judgment came on for a hearing after notice. The record on motion establishes that there is no genuine dispute as to the facts set forth below.

## FACTS

Beginning in the mid-1960's the debtor, Corporation of Windham College (the Corporation), operated the College as an educational institution exempt from taxation pursuant to Vermont Statutes, title 32, section 3802(4). The College suspended normal operations in December 1978. On April 3, 1980, the Corporation filed a petition for relief under Chapter 7 of the Bankruptcy Code (Code).

Prior to filing for relief, the Corporation defaulted on certain indenture obligations to the Vermont National Bank (the Bank) arising out of indenture agreements entered into by the Corporation, the Bank and the United States. The Corporation's indenture obligations were secured by senior mortgages on most of the improved real property on the College campus (a legal description of the premises hypothecated by the Corporation to the Bank in connection with the indenture agreements appears in Exhibits D and E of the Statement of Financial Affairs attached to the Corporation's petition for relief). (The real estate comprising the campus consists of the hypothecated premises; additionally, the Fine Arts Building; additionally, other real property. The hypothecated premises consist primarily of seven dormitories and three academic buildings. The other real property consists primarily of some improved land with fixtures including tennis courts and blacktop, and some buildings including a craft barn, an art shack, and a maintenance shop). In November, 1979 the Bank as indenture trustee for the United States foreclosed the mortgages of the hypothecated premises and foreclosure decrees were entered in Windham County Superior Court. In March, 1980 the Bank as indenture trustee took possession of the hypothecated premises and recorded a notice of possession by the United States on the land records of the Town of Putney, Vermont.

On August 8, 1979, the Town amended its grand list to assess the taxes at issue. A Grievance Day Appeal by the Corporation and by the Bank as indenture trustee was heard by the Town's Board of Listers, and was denied. An appeal to the Board of Civil Authority of the Town followed; this appeal was also denied. A further appeal in the Windham County Superior Court was pending at the time the Corporation filed for relief. The administrative appeal decisions of the Town involved the taxation of both real and personal property; however, only the matter of the real estate taxation is currently before the Court.

## DISCUSSION

Bankruptcy Rule 756, which governs summary judgment procedure, invokes Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides:

(c) Motion and Proceedings thereon. . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

The record which the court may consider on motion for summary judgment includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. The court may not consider statements of fact presented in motions, memoranda of law, or other papers because these materials, denominated "Motions and Other Papers" under Rule 7(b) of the Federal Rules, are not pleadings under Rule 7(a) or Bankruptcy Rule 707 and are by the language of Rule 56 not made part of the record on motion for summary judgment. *Goldman v. Summerfield*, 214 F.2d 858 (D.C.Cir.1954) (legal memoranda not part of record on motion for summary judgment); *Sardo v. McGrath*, 196 F.2d 20 (D.C.Cir.1952) (memoranda of law expressly not made part of record on motion for summary judgment); *Schering Corporation v. Home Insurance Company*, (2d Cir. 6/21/83) 712 F.2d 4 (trial court may

properly consider documents set forth in Rule 56(c)—pleadings, depositions, affidavits, answers to interrogatories, and admissions—in ruling on motion for summary judgment). The reason for excluding motions and other papers from the record on motion for summary judgment is that such materials do not have the solemnity of pleadings or the dignity of statements made under oath. *See generally,* J. Moore, A. Vestal & P. Kurland, Moore's Manual: Federal Practice and Procedure [hereinafter cited as *Moore's Manual*] § 17.08 and cases cited at page 17–21 n. 22 (1981) and at page 1284 n. 10 (1967). Despite the court's inability to observe the affiant's or deponent's demeanor, the availability of cross-examination during sworn testimony, in depositions or interrogatories, in effect, is adequate protection of the parties' rights. 6 Moore's Federal Practice 56.15[4] at 56–513 (1976).

This court, therefore, has stated that summary judgment is appropriate, "... when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact." *In Re D'Avignon,* 25 B.R. 838, 840 (Bkrtcy.Vt.1982); *accord, Bryant v. Kentucky,* 490 F.2d 1273 (6th Cir.1974).

■ By expressly providing that requests for admissions may be considered, Rule 56 invokes Rule 36 of the Federal Rules. Rule 36, applicable to bankruptcy cases through Bankruptcy Rule 736, provides:

(a) Request for Admission. A party may serve ... a written request for the admission ... of the truth of any matters ... set forth in the request that relate to statements or opinions of fact or of the application of law to fact...

Each matter of which an admission is requested ... is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter...

(b) Effect of admission. Any matter admitted under this rule is conclusively established ... for the purpose of the pending action...

Rule 36 serves two vital purposes: to narrow the issues for trial by eliminating issues with respect to which there is no dispute, and to facilitate the proof at trial with respect to issues that cannot be eliminated from the case. Fed.R.Civ.P. 36, advisory committee note. As an instrument of discovery, the purpose of requests for admissions is not necessarily to obtain information but to narrow the issues for trial. *Webb v. Westinghouse Electric Corp.,* 81 F.R.D. 431 (E.D.Pa.1978), cited in *Matter of Manley,* 3 B.R. 97, 98 (Bkrtcy.S.D.N.Y.1980). An admission under the rule is comparable to an admission in pleadings; but where a denial contained in the pleadings is inconsistent with an admission under the rule, the admission under the rule supersedes the denial contained in the pleadings. Fed.R. Civ.P. 36 advisory committee note; *see generally, Moore's Manual,* § 15.12. Summary judgment may be granted where material facts are established as uncontroverted by reason of an admission under the rule. *Id.* at page 15–110 n. 35 (1982) and cases cited therein; *see, In Re Hess,* 21 B.R. 465, 467 (Bkrtcy.W.D.Va.1982).

Rule 56 of the Federal Rules further provides:

(e) ... Defense Required.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him....

Once a motion is made and supported as provided under the rule, the role of the pleadings in disposing of the motion is destroyed. *Moore's Manual,* § 17.10(2) and cases cited at page 17–34 nn. 3, 4 (1981). When the moving party, unaided by presumptions in his favor, establishes facts which entitle him to a judgment, a duty is cast on the opposing party to bring forth

evidence to show that there is a genuine issue of fact. *In Re Flagstaff Foodservice Corp.*, 25 B.R. 844, 853 (Bkrtcy.S.D.N.Y. 1982), citing to *United States v. Pent-R-Books, Inc.*, 538 F.2d 519, 529 (2d Cir.1976), *cert. den.*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *see, Moore's Manual*, § 17.10(3). Under Rule 56(e) the opposing party may not rest upon mere conclusary allegations or denials but must set forth supporting arguments or facts in opposition to the motion. *SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir.1978); *Schering Corp. v. Home Insurance Co.* at 9. A failure to discharge this duty entitles the movant to summary judgment if appropriate under the standards of Rule 56. *First National Bank v. Cities Service Corp.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see, Moore's Manual*, § 17.10[3] and cases cited at page 17–37 n. 13 (1981), and at page 1292 n. 9 (1972). This court noted the policy reason behind Rule 56(e) in *In Re D'Avignon*, 25 B.R. at 840: "Summary judgment is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact even though such issue might have been raised by formal pleadings." *Accord, Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972).

On motion for summary judgment the court does not try issues of fact; it only determines whether there are issues to be tried. *Heyman v. Commerce and Industry Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). The key is issue-finding, not issue-resolution. *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir.1982). In ruling on the instant motion, the court considers only materials of record: the pleadings, answers to interrogatories, admissions and affidavits (No depositions appear in the record.). The court may also take judicial notice of its own public records in this bankruptcy proceeding. *United States v. Philadelphia*, 140 F.2d 406 (3d Cir.1944); *Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, *cert. den.*, 319 U.S. 755, 63 S.Ct. 1163, 87 L.Ed. 1708, *reh. den.* 319 U.S. 785, 63 S.Ct. 1432,

87 L.Ed. 1728 (D.C.Cir.1942). The admissions and answers to interrogatories are those of the Town; the Town did not conduct discovery. The affidavits were submitted by the United States and the Corporation. If the uncontroverted affidavits and discovery material establish the nonexistence of any genuine issue for trial, the court should render summary judgment on the whole case despite the allegations and recitals contained in the Town's pleadings. If summary judgment is not rendered on the whole case, the court may proceed under Rule 56(d) to determine some issues and to set down for trial the remaining issues. *In Re Medico Associates, Inc.*, 23 B.R. 295, 300 (Bkrtcy.D.Mass.1980).

The basis of the Town's tax claims for the years 1979 through 1983, inclusive, is that the Corporation owned or as mortgagor was in possession of the College campus on April 1 of each of these years but that during these years the College was not used for educational purposes. Before examining the matter of the Town's tax claims with respect to the real property not hypothecated in connection with the indenture agreements, the court considers the matter of the tax claims with respect to the hypothecated premises. The relevant provisions of Vermont law are Vermont Statutes, title 32, Sections 3651 and 3652. Section 3651 provides: "Taxable real estate shall be set in the list to the last owner or possessor thereof on April 1 in each year...." Section 3652 provides: "When real estate is mortgaged, the mortgagor shall be deemed the owner thereof for the purpose of taxation, until the mortgagee takes possession, after which the mortgagee shall be deemed the owner...." Thus, no real estate tax with respect to the hypothecated premises is assessable to the Corporation for any year in which on April 1 the Corporation did not own the hypothecated premises or as mortgagor had been superseded in the possession thereof by the mortgagee.

The uncontroverted facts are that before April 1980: (1) the Bank in its representative capacity as indenture trustee for the

United States foreclosed the mortgages on the hypothecated premises; (2) foreclosure decrees were entered in Windham County Superior Court; and (3) the Bank took possession of the hypothecated premises and caused to be recorded a Notice of Possession by the United States on the land records of the Town of Putney, Vermont. Affidavit of Kenneth v. Fisher (Fisher) at page 2, paras. 2, 3. On April 1, 1980, the Corporation did not own nor was in possession of the hypothecated premises, having been superseded in possession by the United States as mortgagee. Fisher at page 2, paras. 3, 4; Affidavit of John R. Davidson at page 1, para. 2; Statement of Financial Affairs for Debtor at pages 8, 9, 13, 16, 17 and at Form 8 statement of financial affairs, page 3, question 16. Therefore, the Corporation did not own the hypothecated premises for 1980 tax purposes, 32 Vt.Stat. § 3652, and no real estate tax with respect to the hypothecated premises is assessable to the Corporation for that year, *id.* § 3651. Moreover, real estate owned by the United States is exempt from taxation, 32 Vt.Stat. § 3803(1), and the town does not dispute that property in the possession of the United States as mortgagee is not taxable (Answer No. 14 to Interrogatories of the United States). As to the years 1981 through 1983, inclusive, the uncontroverted facts are that the Corporation neither redeemed nor repurchased the hypothecated premises. Affidavit of Kenneth v. Fisher at page 2, para. 2; prior records of the court in this bankruptcy proceeding. Therefore, no real estate tax with respect to the hypothecated premises is assessable to the Corporation in 1981, 1982 or 1983. 32 Vt.Stat. §§ 3651, 3652.

The court now focuses on 1979. The Town has admitted that the United States took possession of the hypothecated premises in March 1979. Request to Admit at page 2, para. 6 (deemed admitted under Rule 36(a) by reason of the Town's failure to respond). This admission, however, is inconsistent with the information supplied by affiant Fisher to the effect that the United States took possession in March 1980. Rule 36 does not require that the

court accept an admission inconsistent with the facts of record. On this basis the United States took possession of the hypothecated premises in March 1980 notwithstanding the Town's admission that the United States took possession in 1979.

The court now considers the matter of the 1979 tax assessment on the hypothecated premises. On April 1, 1979, the Corporation as mortgagor was in possession of the hypothecated premises. Thus the Corporation was the owner of the hypothecated premises for 1979 tax purposes. 32 Vt.Stat. §§ 3651, 3652. Therefore, the controlling issue with respect to the 1979 tax on the hypothecated premises is whether the Town's August 1979 amendment to its grand list, rescinding the College's tax exempt status, carries with it the authority of Vermont law. This issue requires two lines of inquiry: (1) whether there is a sufficient factual basis for the Town's amendment, and (2) whether the Town assessed the disputed taxes in technical conformity with Vermont law.

With respect to whether the Town assessed the disputed taxes in technical conformity with Vermont law, the United States and the Corporation have raised the objection that the Town failed to personally examine the taxed real estate prior to rendering its tax assessments thereon. The relevant provision of Vermont law, Vermont Statutes, title 32, section 4041, provides that "[o]n April 1 the listers shall ... make such personal examination of the property which they are required to appraise as will enable them to appraise it at its fair market value." The bare wording of the statute is susceptible of two interpretations: (1) that the assessor's personal examination is always required prior to the assessment of tax, or (2) that a personal examination is required only if the assessor is unable otherwise to fairly appraise the value of the property. Vermont courts construe the statute with a view towards its purpose, viz.: to protect the taxpayer individually and collectively from property taxation based on arbitrarily determined appraisal values. Viewed in this light, the

Town's failure to make a personal examination of the College campus prior to rendering its tax assessments thereon is alone not fatal to the Town's tax claims. The United States and the Corporation, however, maintain also that the disputed taxes were assessed on the basis of arbitrarily high appraisal values. Were the United States' and the Corporation's assertions to this effect supported by uncontroverted facts of record, their objection that the Town as assessor did not meet the technical requirements of Vermont law might be fatal to the Town's tax claims.

■ Turning to the matter of the sufficiency of the factual basis underlying the Town's amendment to its grand list, the controlling issue is whether the College was used for educational purposes. The Town admits that the only reason it amended its grand list was that it had determined that the College was not used for educational purposes between January 1 and April 1, 1979. Request to Admit at page 2, para. 2 (deemed admitted under Rule 36(a)). The controlling issue therefore is whether the College was used for educational purposes during the first three months of 1979. If during the first quarter of 1979 the College was used for educational purposes, the Town amended its grand list without the requisite factual basis to do so with authority under Vermont law and taxes assessed on the basis of the amendment would not be due under Vermont law. Alternatively, if the College was not used for educational purposes during the first quarter of 1979, objections to the grand list amendment on the ground that it is unsupported by a sufficient factual basis would not withstand scrutiny, in which case the 1979 tax on the hypothecated premises may be due. (As a further matter, if the 1979 tax on the hypothecated premises is due, the 1979, 1980, 1981, 1982 and 1983 taxes on the other real property comprising the College campus may also be due. The argument would be that the College, properly stripped of its tax-exempt status in 1979, did not subsequently regain that status).

Whether the College was used for educational purposes between January 1 and April 1, 1979, is a mixed question of law and fact. By resting on its pleadings, the Town admits there is no genuine issue with respect to the statements of fact set forth in the affidavit submitted by the Corporation. *Matter of Magnafici,* 16 B.R. 246, 248 (Bkrtcy.N.D.Ill.1981). The affiant's factual statements do not however, resolve the ultimate fact of whether during the first quarter of 1979 the College was used for educational purposes, the affiant's averments as to this ultimate fact notwithstanding. Further, although the affidavit submitted by the Corporation states that an "intercession course" was conducted at the College in January 1979, the Town, in answering plaintiffs' written interrogatories, stated: "Subsequent to the closing of the school in December 1978 ... events occurred which indicated the school was not to reopen..." The inference to be drawn from the interrogatory answer is that the College was not used for educational purposes after December 1978. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (on motion for summary judgment, inferences drawn from record must favor party opposing the motion); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (on motion for summary judgment, inferences must be viewed in light favorable to party opposing the motion). Thus, the ultimate fact of whether the College was used for educational purposes during the first three months of 1979 is disputed even though the Town concedes that a mini-course was conducted at the College in January 1979. The issue of whether the College was used for educational purposes between January 1 and April 1, 1979, should be resolved at trial.

## CONCLUSION

Statements of fact of record made by the Corporation and the United States, and uncontroverted by the Town, establish that there is no issue for trial with respect to the following facts and matters:

(1) The Corporation as mortgagor of the hypothecated premises was not in possession thereof on April 1 of each of the years 1980 through 1983, inclusive, having been superseded in possession by the United States as mortgagee. On this basis the Corporation was not the owner of the hypothecated premises for 1980, 1981, 1982 and 1983 tax purposes. It follows that the Corporation bears no liability for real estate taxes with respect to the hypothecated premises for these years.

(2) The Corporation as mortgagor of the hypothecated premises was in possession thereof on April 1, 1979. On this basis the Corporation was the owner of the hypothecated premises for 1979 tax purposes. It follows that the Corporation may bear liability for real estate tax with respect to the hypothecated premises for 1979 if the College was not used for educational purposes between January 1 and April 1, 1979.

(3) There is no dispute as to the immateriality to the determination of this action of events occurring after April 1, 1979, with respect to any property owned, mortgaged, hypothecated as security, or sold by the Corporation.

(4) There is no dispute as to the immateriality to the determination of this action of events occurring at the College after April 1, 1979.

The issue for trial which survives the motion for summary judgment is whether the College was used for educational purposes between January 1 and April 1, 1979.

### ORDER

Upon the foregoing, the motion of the debtor's trustee for summary judgment is,

GRANTED in favor of the corporation with respect to taxation of the hypothecated premises for the years 1980, 1981, 1982 and 1983;

DENIED with respect to taxation of the hypothecated premises for the year 1979; and

DENIED with respect to taxation of the other real property comprising the campus.